**[Cite as *State v. Qualls*, 2020-Ohio-3753.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals Nos. OT-18-035 |
| | OT-18-040 |
| Appellee | |
| | Trial Court Nos. 18 CR 095 |
| v. | 18 CR 116 |
| Corwin Qualls | **DECISION AND JUDGMENT** |
| Appellant | Decided: July 17, 2020 |

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated and delayed appeal from a judgment of the Ottawa

County Court of Common Pleas, which found appellant guilty of one count each of

corrupting another with drugs, illegal conveyance of drugs onto grounds of detention

facility or institution, money laundering, complicity to money laundering, and two counts

of complicity to commit illegal conveyance of drugs onto grounds of detention facility or institution, and sentenced him to a total prison term of 20 years. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} This appeal originated from three separate indictments by Ottawa County Grand Juries against appellant, Corwin M. Qualls, that resulted in three criminal cases for a total of 26 felony counts. In summary, in the course of appellant furnishing illegal drugs to various people, two people overdosed, and one died. Appellant also furnished illegal drugs to people in jail. Appellant also laundered money comprised of the proceeds from such illegal drug activity through the commissary account of an inmate.

{¶ 3} A jury trial commenced for two of the cases representing 23 of the 26 pending felony charges. At the conclusion of the prosecution's case, appellant changed his plea from not guilty to guilty to six felonies: (1) corrupting another with drugs, a violation of R.C. 2925.02(A)(3), and a felony of the second degree, R.C. 2925.02(A)(C)(1)(a); (2) complicity to commit illegal conveyance of drugs onto grounds of detention facility or institution, a violation of R.C. 2923.03(A) of the principal offense of R.C. 2921.36(A)(2), and a felony of the third degree, R.C. 2923.03(F) and 2921.36(G)(2); (3) money laundering, a violation of R.C. 1315.55(A)(1), and a felony of the third degree, R.C. 1315.99(C); (4) complicity to money laundering, a violation of R.C. 2923.03(A) of the principal offense of R.C. 1315.55(A)(1), and a felony of the third degree, R.C. 1315.99(C); (5) illegal conveyance of drugs onto grounds of detention facility, a violation of R.C. 2921.36(C), and a felony of the third degree, R.C.

2.

2921.36(G)(2); and (6) complicity to commit illegal conveyance of drugs onto grounds of detention facility, a violation of R.C. 2923.03(A) of the principal offense of R.C. 2921.36(C), and a felony of the third degree, R.C. 2923.03(F) and 2921.36(G)(2). Two felony counts had been dismissed prior to the start of the trial, and the remaining 18 felony counts, including the third case, were dismissed by appellee in connection with the plea agreement.

{¶ 4} The trial court accepted the plea changes, found appellant guilty of the six offenses, and by a nunc pro tunc judgment entry journalized on October 3, 2018, sentenced appellant to a total prison term of 20 years.

{¶ 5} Appellant then filed separate appeals for the two underlying criminal cases representing his six convictions. On January 9, 2019, this court granted delayed appeals and ordered the consolidation of case Nos. OT-18-035 and OT-18-040. Appellant sets forth two assignments of error:

I. Appellant receive ineffective assistance of counsel because counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

II. The trial court erred to the prejudice of appellant in accepting a guilty plea which was not made voluntarily, in violation of appellant's Due Process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

3.

**{¶ 6}** A claim of ineffective assistance of counsel must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 95. The record does not show appellant questioned the licensure of his attorney, Mr. Whitcomb, so his competence is presumed. To overcome this presumption, appellant has the burden to show both deficient performance by his attorney below an objective standard of reasonable representation and a reasonable probability of prejudice that but for his attorney's errors, the court would not have accepted his plea changes, found him guilty of six felonies, and not have imposed a 20-year sentence. *Id.* "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

## I. Deficient Performance

**{¶ 7}** In support of his first assignment of error, appellant argues that his attorney was unprepared for trial. Appellant argues his attorney failed to meet regularly with him and failed to timely provide him with the prosecution's "surprise" discovery, namely jail videos containing incriminating admissions by appellant. Appellant argues that, "Counsel acknowledged his shortcomings in this area with regard to providing ineffective assistance and motioned the court to declare a mistrial on this basis."

**{¶ 8}** We reviewed the record, including the transcripts of the proceedings.

**{¶ 9}** Prior to the start of the second day of trial, on September 26, 2018, appellant made a statement to the trial court out of the presence of the jury. Appellant stated he did not believe he would receive a fair trial because he did not view appellee's exhibit No. 15

4.

until the afternoon of September 24, the day before trial. Exhibit No. 15 is a series of 10 video clips recorded at the Ottawa County Detention Facility, the jail, between September 19 and 22, featuring appellant interacting with different inmates. He argued, "I felt like * * * I made incriminating statements that I feel like I can't defend, because I got so many cases, I was talking about another case and they just going to, if you understand what I'm saying, I was talking about another case and they going to just automatically say I'm talking about this case."

{¶ 10} Appellant anticipated an ineffective assistance of counsel claim, stating, "Everything I told this man, he said I can write it on appeal. But that's the thing; I got to get convicted to write it on appeal." Appellant then listed the deficiencies of his attorney: (1) his attorney has not pursued exculpatory evidence of a fellow inmate who wrote a statement exonerating appellant; (2) his attorney did not pursue with four-days' notice before trial "a very important witness of mine," who is in prison; (3) his attorney has not pursued "more incriminating" evidence against some of appellees' witnesses; (4) his attorney failed to meet with him between June 26 and September 14, 2018; and (5) most importantly to him, his attorney did not do enough to prepare a defense to the "surprise" discovery containing his incriminating statements because the jail videos containing his incriminating statements cannot be clearly heard.

{¶ 11} We review the record for the circumstances for appellant's last two items of deficient performance. There is no evidentiary support for the other allegations.

5.

{¶ 12} On the second day of trial appellee called as a witness Timothy Johnson, a convicted felon who grew up in the same neighborhood as appellant. In exchange for his testimony, Mr. Johnson pled to a reduced sentence for his own 17 charges. Mr. Johnson was a fellow inmate to whom appellant furnished drugs while they were both in the jail. Mr. Johnson testified he asked appellant about drugs, and appellant said "Yeah, I have something with me." Mr. Johnson informed appellant he wanted drugs to sell to generate money for his commissary account to purchase more food. Without an explicit verbal exchange, appellant left opiates in a bathroom, and Mr. Johnson later went to the bathroom and discovered them. Mr. Johnson testified that appellant told him he had "gifted" or "blessed" him with the drugs.

{¶ 13} Mr. Johnson sold the drugs to two inmates, one of whom overdosed. During the jail administrator's investigation of the overdose, appellant received new criminal charges, of which some are underlying charges to this appeal. Mr. Johnson testified feeling guilt or "pressure" from appellant, "That, to my understanding, that he basically helped me so I can get some food, but due to my negligence, he end (sic) up with charges." In response to that pressure, on September 19 and 20, Mr. Johnson received from appellant draft handwritten notes to copy in his own handwriting and to sign. This occurred more than once until appellant was satisfied with the signed note on September 20.

{¶ 14} The content of the note was for Mr. Johnson to deny appellant was involved with the overdose incident. Mr. Johnson knew the content of the note was not

6.

true, but he felt pressure to do what appellant asked. "Because we both was (sic) in the same situation. * * * That's why we were going back and forth with these notes and stuff."

{¶ 15} Appellant and Mr. Johnson met in a common area of the jail, known as the atrium, including at a doorway, to discuss the note. The jail locates videos of the atrium from different angles. On September 20, Mr. Johnson did not have time to copy appellant's latest version of the note, so he signed the note as drafted by appellant and delivered it to him: "[W]e didn't have enough time. It was a rush job. They was (sic) getting ready to take our dorm back up to where we was at."

{¶ 16} Appellant then submitted Mr. Johnson's note, along with other exoneration notes he obtained from fellow inmates involved in the overdose investigation, to his attorney. These exoneration notes contradicted what the inmates were telling investigators. Appellant's attorney then immediately provided Mr. Johnson's note, along with the others, as reciprocal discovery to appellee on September 20.

{¶ 17} Appellee entered in the record that the receipt of the reciprocal discovery "precipitated us to look into the videos of how Qualls came into possession of [Mr. Johnson's] letter on 9-20." According to appellee, "Had that letter not been produced by Mr. Qualls, and Mr. Qualls not demanded it from Mr. Johnson, we wouldn't have ever necessarily looked into these videos." The next day, Friday, September 21, appellee obtained the 10 video clips from the jail administrator, and by 6:00 p.m. that evening, appellee called appellant's attorney to notify him of the production of the videos.

7.

According to appellee, "Mr. Whitcomb was more than diligent in returning the call. And, in fact, Mr. Whitcomb and I actually met on a Sunday morning * * *, and the video was shown to Defense Counsel, at least significant portions of the video. The statements that the State believed were made on that video were disclosed to Mr. Whitcomb."

{¶ 18} According to appellee, two of the video clips showed the note transactions between Mr. Johnson and appellant in the atrium and appellant's incriminating statements, which were corroborated by Mr. Johnson's testimony.

Q: Okay. There [are] several tapes. One of the tapes, I would like you to kind of tell me what you believe this to mean. Corwin Qualls says to you, "All I did was bless you. I ain't going to bless you if you give me mother f* * *ing 17 felonies." What do you believe Corwin Qualls meant in talking to you about blessing you?

A: That, to my understanding, that he basically helped me so I can get some food, but due to my negligence, he end up with charges.

Q: So, by the word bless, he meant gifted you the drugs?

A: Yeah.

* * *

Q: So he wasn't asking you to tell about his involvement; he was asking you to testify favorably for him, right?

A: Yes.

8.

Q:  Did Qualls also tell you in that conversation at the door, did he also made the statement, "If they get me – you don't understand, if they get me on the convey, they get me on everything"?

A:  Yes.

{¶ 19} When appellee and appellant's attorney met on Sunday, September 23, appellee admitted in the record, "[T]he State on that day did not have the ability, due to the fact that it's a Sunday, to produce the DVD's."  The jail videos run on proprietary software and cannot be copied or viewed with just any viewer.  The jail administrator provided copies to appellant's attorney and appellee around midday on Monday, September 24, and appellee filed with the clerk's office a notice of supplemental discovery compliance at 2:05 p.m.  Armed with the video clips and his notes of appellee's impressions of the incriminating statements, appellant's attorney immediately went to the jail to meet with appellant.

{¶ 20} According to appellant's attorney, "It took about an hour and 20 minutes, I guess, to get through all of the videos and at the conclusion of those videos, both myself and my client looked at each other and said, 'Gee, I didn't hear very much, it was pretty muffled.'"  They thought the jury would have the same difficulty hearing the audio.  They finished about 4:15 p.m. on the eve of trial.

{¶ 21} Upon review of the record we do not find appellant's attorney's performance was defective.  There is an indication in the record that around 120 hours of preparation went into this trial.  Appellant admits he met with his attorney after

9.

September 14, to prepare for trial. The chronology of events in the record shows both appellee and appellant's attorney worked diligently to obtain and review the jail videos triggered by appellant's production of Mr. Johnson's letter on September 20. What appellant alleges as a lack of preparation is not supported by the record. What is supported by the record is trial preparation and strategy. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 219.

{¶ 22} We also find the jail videos were not the only evidence of appellant's incriminating statements. Mr. Johnson and the jail administrator, who reviewed the videos and copied them for the parties, testified at trial as to what appellant said. In addition, on the record outside of the presence of the jury, appellant said, "I know I was the one that said it, but I don't remember saying those things." *See State v. Sibert*, 74 Ohio St.3d 342, 343, 658 N.E.2d 772 (1996).

{¶ 23} A motion for a mistrial was offered by appellant's attorney to remedy appellant's claims of ineffective assistance of counsel, and the trial court was well within its discretion to deny the motion because a fair trial was still possible. *Carper v. Snodgrass*, 6th Dist. Lucas No. L-03-1065, 2003-Ohio-6975, ¶ 13. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

10.

{¶ 24} After appellant expressed his frustrations on the record, appellant's attorney addressed the court.

Mr. Whitcomb: Your Honor, I would just indicate that if I understand Mr. Qualls' statements to the Court this morning, he's dissatisfied with my service, and that he feels that he is inadequately prepared to proceed. And on his behalf then, I would ask for a mistrial.

Court: All right. Well, I'm going to deny the mistrial in this matter. * * * I have * * * no doubt that Mr. Whitcomb has prepared to the best of his ability, given the circumstances and perhaps the lateness of the evidence that's coming to him. And it's hard for me, and even you, to know how much of what Mr. Whitcomb is doing is just part of trial strategy. * * * So, we're going to move forward with the case. I appreciate you making your concerns of record and, certainly, that is noted. We'll proceed.

{¶ 25} We do not find appellant demonstrated his attorney's performance was deficient below an objective standard of reasonable representation. We do not find the trial court abused its discretion when it denied the motion for a mistrial.

{¶ 26} Appellant's first assignment of error is not well-taken.

## II. Prejudice

{¶ 27} In support of his second assignment of error, appellant argues that he was prejudiced by his attorney's ineffective assistance because he did not voluntarily offer to change six of his pleas to guilty. Appellant argues he "was essentially forced to enter a

plea after the State played [the jail videos] for the jury" because "he was not aware of the statements that would be attributed to him in the videos which were incriminating admissions to elements of the indicted charges." Appellant argues that if his attorney had repeatedly viewed the jail videos to clearly hear the incriminating statements, appellant "would have entered into a plea agreement to a ten year ODRC sentence that was offered pre-trial by the State of Ohio."

{¶ 28} Appellant specifically argues that he received ineffective assistance of counsel during plea negotiations that caused him to reject a more attractive offer prior to trial then what he was offered during trial. We find the record shows appellant rejected two guilty plea offers before finally changing his plea.

### A. First Rejected Plea Offer

{¶ 29} According to the record, the first plea offer rejected by appellant was on September 19. During plea negotiations appellant is "'entitled to the effective assistance of competent counsel.'" *State v. Williams*, 6th Dist. Lucas No. L-12-1238, 2015-Ohio-405, ¶ 119, quoting *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). The Ohio Supreme Court recognizes "that trial counsel may be ineffective if they fail to communicate the terms of a plea offer to a defendant." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 302, citing *Missouri v. Frye*, 566 U.S. 134, 145, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). The Ohio Supreme Court further recognizes that prejudice may arise under *Strickland v. Washington*, 466 U.S. 668,

12.

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if the attorney's deficient performance caused the defendant to reject a plea deal with a more favorable result. *Id.*, citing *Lafler* at 164.

{¶ 30} To succeed on a claim of prejudice where a plea offer has lapsed or been rejected because of the attorney's deficient performance, appellant must demonstrate: (1) a reasonable probability he would have accepted the first plea offer had he received effective assistance from his attorney; (2) a reasonable probability he would have entered the first plea without appellee canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law; and (3) a reasonable probability that the first plea was a more favorable result by reason of a plea to a lesser charge or a sentence of less prison time than the end result of the criminal process. *Frye* at 147. We find that appellant fails to demonstrate the first element.

{¶ 31} The record shows appellant received his *Frye* hearing on September 19. In exchange for appellant's guilty pleas to two out of the 23 felonies to be tried starting September 25, appellee offered to recommend to the trial court a total sentence of 10 years. Appellee clearly stated in the record that if appellant rejected the offer that day, the offer was withdrawn, no further offers would be made, and the matter will proceed to trial. The trial court engaged in extensive questioning to ascertain that appellant's decision to reject the plea was done voluntarily, intelligently and knowingly.

Court: The plea offer, do you understand today by rejecting that, that the State of Ohio is going to withdraw any plea offers?

A: I understand.

13.

Court: And it is your intention today to reject any plea offer being made by the State of Ohio?

A: Yes, sir.

Court: Are you doing that freely and voluntarily?

A: Yes, sir.

Court: Are you -- with a full understanding of the possible consequences?

A: Yes, sir.

Court: Do you have any questions of your attorney at this time?

A: No, sir.

Court: Has he adequately and fully explained all of these options and possibilities to you?

A: Yes, sir.

Court: Any other questions?

A: No, sir.

{¶ 32} The next day, on September 20, by obtaining Mr. Johnson's note, appellant triggered the sequence of events regarding the jail videos that recorded his incriminating statements. Mr. Johnson and the jail administrator were already on disclosed witness lists. We do not find that appellant was prejudiced on September 19 by his attorney's alleged failure to repeatedly review the jail videos because the jail videos did not exist until September 21. We do not find appellant demonstrates a reasonable probability he

14.

would have accepted the first plea offer during the *Frye* hearing because he very clearly rejected that offer while stating his satisfaction with his attorney's advice.

## B. Seconded Rejected Plea Offer

{¶ 33} According to the record, the second plea offer rejected by appellant was on September 27, the third day of trial: 25 years in exchange for six felony guilty pleas.

{¶ 34} The jail videos were played that day for the jury using the courtroom's equipment. By agreement of the parties, the court reporter did not transcribe the videos into the record. Out of the presence of the jury, appellant's attorney reiterated his objection raised on the first day of trial, that the muffled videos were not to be enhanced in any way to improve "the discernability of what was being said." However, he argued what was played for the jury "was much clearer * * * and I, today, heard something that I did not hear on Monday afternoon." He further argued, "My client feels that based on the fact that we didn't have a discernable copy or we couldn't hear it on the machine [in the jail] that he feels that there is somewhat of a prejudice." Appellant then directly addressed the trial court and blamed his attorney for not listening to the videos enough times until appellant's incriminating statements were clear, even though he heard the majority of those statements: "Most of them, I would say about 25 percent I didn't see or hear that I heard today, or I wouldn't be here."

{¶ 35} Appellee responded that appellant knew of the existence of every incriminating statement because "he is the one who spoke those words. * * * He is in the best position out of anybody to be on notice about what came out of his own mouth. We

are not talking about months ago.  We are literally talking less than a week ago those statements were made."  We agree with the trial court, as the authenticity of appellant's voice on the recording is undisputed.  *State v. Phillips*, 6th Dist. Lucas No. L-12-1111, 2013-Ohio-4525, ¶ 17.

{¶ 36} After a recess to allow appellant, his attorney, and appellee time to discuss a second plea offer, appellant rejected it, stating, "I could never take 25 years." Appellant stated that because his attorney failed to listen to the videos multiple times "for some of the incriminating statements I probably said," he was now unfairly facing 25 years in prison.  According to appellant, he did "nothing" to warrant a 25-year sentence: "If he would have did (sic) his job, like you say he did, he would have seen what was on the tape, made sure what was on the tape, so I could take the plea bargain.  Now that he didn't see it and I didn't see it, now I am forced – I am in this predicament I am in now." The trial continued.

{¶ 37} We do not find that appellant was prejudiced on September 27 by his attorney's alleged failure to review the jail videos multiple times because the jail videos were not the sole evidence of appellant's incriminating statements.  We do not find appellant demonstrates a reasonable probability he would have accepted the second plea offer because he very clearly rejected that offer while stating he did "nothing" to induce him to accept a 25-year sentence.

16.

## C. Change of Pleas

{¶ 38} According to the record, the third plea offer presented to appellant was also on September 27, but after appellee rested its case. The trial court advised appellant, "Your defense hasn't started, Mr. Qualls. So sleep on this, talk to Mr. Whitcomb if you need to tonight, and we will talk tomorrow again. You will have an opportunity to talk before we start." Through additional negotiations that night by his attorney with appellee, the new plea offer was 20 years in exchange for six guilty plea felonies, where the combined potential prison sentence was 60.5 years. The next morning, on September 28, appellant requested to change his pleas to six felonies: "[W]hat induced me to take them was when we said the possibilities [for judicial release]. This is what induced me to take it."

{¶ 39} We review a trial court's allowance of a change of plea for an abuse of discretion, "although such discretion should be liberally exercised in favor of the accused." *Crider v. Maxwell*, 174 Ohio St. 190, 191, 187 N.E.2d 875 (1963). Trial courts have discretion in determining whether to accept a change of plea pursuant to R.C. 2943.03 and Crim.R. 11(C)(2). *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984). R.C. 2943.03 does not apply in this case because the plea change occurred after the trial began.

{¶ 40} A defendant entering a plea in a criminal case must do so knowingly, intelligently and voluntarily, and the failure of any one "'renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'"

17.

*State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 9, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Crim.R. 11 was adopted in 1973 to give detailed instructions to trial courts on the procedures to follow before accepting pleas of guilty or no contest." *Id.* "Crim.R. 11(C) requires a trial judge to determine whether that criminal defendant is fully informed of his or her rights and understands the consequences of his or her guilty plea." *Id.* at ¶ 10.

{¶ 41} We find it significant that after the prosecution submitted its case to the jury, then appellant began to have serious concerns about being convicted for up to 60.5 years. *See Jenkins* at 223. Whether appellant argues that he would have accepted the first or second plea offers before finally accepting the third offer and changing his pleas to guilty, we find those are appellant's decisions to make, and the trial court was not required to accept any of appellant's plea decisions. Crim.R. 11(C)(2).

{¶ 42} When appellant sought to change his pleas to guilty on six felonies, the trial court engaged in a lengthy colloquy, including the following questions:

Court: I am going to follow the recommendation [for 20 years]. Do you understand that?

A: Not quite. You said: Was I promised anything? I wasn't promised a real promise, but what induced me to take the plea bargain is basically the possibility, a possibility was part of the plea bargain, a possibility of Judicial Release. It wasn't no promise (sic).

18.

Court:  Right.

A:  There was a good possibility that if I do –

Mr. Whitcomb:  -- There was off-the-record sort of discussions that we had that if he did, you know, cooperate and so forth, that there would be a consideration given in the future, but no promises.  Nobody has made any promises.  He is facing the 20 years.  That is what was promised, if you will, as what the recommendation to the Court would be.

Court:  Do you agree, Mr. Qualls?

A:  That is what induced me to take the plea bargain, sir.

Court:  That is fine.  Good.  Have you had enough time to think about your decision?  I know this offer was just made this morning.  You [had] an offer that you were contemplating last night and that offer changed significantly in your favor in the last 18 hours or so.  Have you had enough time to think about it?

A:  I am satisfied with the time.  I really didn't, but I am saying that I am cool with it right now.

Court:  Have you had enough time to ask Mr. Whitcomb questions about that?  Has he answered all of your questions?

A:  I will say that to the best of his ability, I believe.

Court:  Now I am going to ask you if you are satisfied with the advice and counsel of Mr. Whitcomb and I know that you and Mr.

Whitcomb have had some differences about how this has been tried over the course of the last four days, but as you sit here now, are you satisfied with his representation of you in this matter?

A:  * * * I would be lying if I said yeah.

Court:  Given your circumstances today, do you think he is giving you good advice on the plea?

A:  Yes.

{¶ 43} The trial court then reviewed the plea agreement in detail with the appellant, confirmed appellant's understanding of each plea, the sentencing recommendation for each plea, each right he was waiving, and his signature to the plea agreement.

Court:  Did you enter into that agreement voluntarily and of your own free will?

A:  Yes, sir.

{¶ 44} We find that appellant's guilty pleas were "not the result of coercion, trickery, deception or intimidation and that [they were] 'voluntarily, intelligently and knowing made with a complete understanding of the consequences.'"  (Citations omitted.)  *State v. Piacella*, 27 Ohio St.2d 92, 93, 271 N.E.2d 852 (1971).  We find appellant made his guilty pleas intelligently, despite his later regret of rejecting the first plea offer due to his miscalculation of the quality of appellee's case.  *Id.* at 94.  We find appellant repeatedly confirmed he received no promise to induce him to change his pleas

20.

to guilty other than the recommendation to limit his prison time to 20 years and his belief of the potential for judicial release in the future. *Id.* at 95. If trial had proceeded, appellant was motivated to avoid felony convictions that totaled 60.5 years in prison. *Id.* at syllabus. Although appellant expressed frustration with his attorney, he ultimately agreed that under the circumstances, his attorney was giving him good advice on the plea changes.

{¶ 45} We find that the record confirms the trial court engaged in a full plea colloquy with appellant in compliance with Crim.R. 11(C)(2). The trial court did not abuse its discretion when it accepted appellant's plea changes, and the trial court's attitude was not unreasonable, arbitrary or unconscionable.

{¶ 46} Appellant's second assignment of error is not well-taken.

{¶ 47} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Thomas J. Osowik, J.          

Gene A. Zmuda, P.J.                _____
CONCUR.                                       JUDGE

                                  _____
                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.