[Cite as *State v. Graham*, 2024-Ohio-1300.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                          Court of Appeals No.  S-23-015

      Appellee                                    Trial Court No.  22 CR 118

v.

Logan Graham                                    **DECISION AND JUDGMENT**

      Appellant                                    Decided:  April 5, 2024

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Catherine Meehan, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal of the Sandusky County Court of

Common Pleas judgment of April 20, 2023, following appellant's plea, sentencing

appellant to two prison terms of 24 months as to each count of aggravated vehicular

homicide in violation of R.C. 2903.06(A)(2)(a) and (B)(3), each felonies of the third

degree, with the sentences ordered to run consecutively. For the reasons that follow, we affirm.

## II. Facts and Procedural History

{¶ 2} On August 27, 2021, appellant, Logan Graham and his 17-year-old girlfriend, J.T., were driving home. Appellant drove at high speed on County Road 41, reaching speeds over 100 miles per hour, when he crossed the center line and struck another vehicle head-on. The resulting crash killed appellant's passenger, J.T., and the driver of the other vehicle, J.O., with both pronounced dead at the scene. After the crash, appellant confided to a friend that he and J.T. had been arguing and he intentionally swerved into J.O.'s lane because he was mad at J.T. However, appellant's statements to investigators indicated he had no memory of events immediately preceding the crash.

{¶ 3} On March 4, 2022, appellant was charged in a two-count indictment as follows: Count 1: aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and (B)(3), a felony of the third degree, and Count 2: aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) and (B)(3), a felony of the third degree. Appellant appeared for arraignment with counsel on March 22, 2022, and requested a competency hearing. The trial court referred appellant for a competency evaluation.

{¶ 4} On June 14, 2022, the trial court held a competency hearing. The parties stipulated to the findings contained within the competency report prepared by Court Diagnostic and Treatment Center. The trial court found appellant competent to stand trial.

2.

{¶ 5} On August 11, 2022, appellant filed a motion seeking funds to hire an accident reconstruction expert at the state's expense, which the trial court granted. On October 4, 2022, the trial court approved payment for appellant's expert in the amount of $2,962.20.

{¶ 6} On November 21, 2022, appellant's appointed trial counsel sought leave to withdraw, indicating a breakdown in the attorney/client relationship. The trial court granted the motion and appointed new trial counsel.

{¶ 7} On December 1, 2022, new counsel entered an appearance and filed a request for discovery. The trial court continued the trial date to March 14, 2023. On December 9, 2022, the prosecutor filed an answer to the discovery request, as well as a notice to use evidence, followed by additional discovery filed on January 4, and March 8, 2023.

{¶ 8} On March 9, 2023, appellant withdrew his prior plea and entered a plea of guilty to the offenses charged in the indictment, maintaining his innocence and purporting to enter an *Alford* plea. On April 20, 2023, the trial court sentenced appellant to an aggregate prison term of four years and ordered a Class II driver's license suspension for a period of 15 years, beginning with appellant's release from prison.

{¶ 9} Appellant filed his notice of appeal on May 12, 2023.

{¶ 10} On July 13, 2023, appellant filed his motion to withdraw plea in the trial court, which the state opposed in a written response. At the same time, appellant filed a

motion to stay his appeal in this court, and we remanded the matter for ruling on the motion to withdraw the plea.

{¶ 11} On August 9, 2023, the trial court denied the motion in a written decision. The trial court noted the sole basis for the post-sentence motion to withdraw the plea was ineffective assistance of counsel, with argument that trial counsel should have filed motions to challenge the scientific data. In rejecting this argument, the trial court noted:

> Absent from this argument are specifics. Defendant had the benefit of their own expert and although no motions challenging the evidence were filed there is nothing presented in the motion to withdraw plea to indicate that the scientific data was incorrect.

The trial court determined that appellant presented only a "general idea that trial counsel should have done more," rather than evidence or legal argument. Finding appellant raised an unsupported challenge to his counsel's trial strategy, the trial court found no merit to appellant's claims of manifest injustice under Crim.R. 32.1, and denied the motion.

{¶ 12} Upon ruling on the motion to withdraw plea, the matter was returned to this court for briefing on appeal.

### III. Assignment of Error

{¶ 13} Appellant raises the following assignments of error on appeal:

> **Assignment of Error 1**: Appellant's *Alford* plea was not knowing, intelligent, or voluntarily made.

4.

**Assignment of Error 2**: The trial court abused its discretion by denying appellant's motion to withdraw plea based on the ineffective assistance of counsel.

**Assignment of Error 3**: The trial court abused its discretion when it denied appellant an evidentiary hearing on his motion to withdraw plea.

## IV. Analysis

{¶ 14} Appellant's assignments of error concern the validity of his plea, arguing his trial counsel coerced him into entering his plea "at the last minute," contrary to his desire to proceed to trial on a theory that he fell asleep at the wheel, resulting in an accidental collision.[1] Appellant's first assignment of error challenges the knowing, intelligent, voluntary nature of his plea. His second and third assignments of error challenge the trial court's denial of his motion to withdraw his plea, without hearing.

### A. The record demonstrates a knowing, intelligent, and voluntary plea.

{¶ 15} In his first assignment of error, appellant argues his plea was not knowing, intelligent, and voluntary because he was coerced into entering the plea. Appellant argues the coercion is demonstrated by the record, showing he rejected the same plea ten days prior to entering it, and in rejecting the plea, demonstrated a desire to proceed to trial.

---

[1] While the parties refer to an *Alford* plea "to the indictment," we note that an *Alford* plea permits a defendant "to plead guilty to a negotiated reduced charge while maintaining his or her innocence[.]" *State v. Wilson,* 6th Dist. Ottawa No. OT-02-037, 2003-Ohio-3090, ¶ 5. However, appellant does challenge this aspect of his plea, and his trial counsel acknowledged at sentencing that the state could have "indicted differently" with evidence of purposeful conduct, based on claims appellant confided his intent to cross the center line to a friend. As appellant does not raise this issue, we do not address this matter on appeal.

Appellant further argues that the lack of any evidentiary challenges to the state's scientific evidence demonstrated his trial counsel's incompetence, and this incompetence resulted in a coerced plea.

{¶ 16} Appellant entered his plea of guilty while maintaining his innocence, permitted under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). "Because an *Alford* plea has the same effect as a guilty plea, 'it must be made voluntarily, knowing, and intelligently.'" *State v. Hopingx,* 6th Dist. Lucas No. L-18-1038, 2019-Ohio-1486, ¶ 7, quoting *State v. Willis,* 6th Dist. Lucas No. L-0701210, 2008-Ohio-6808, ¶ 4, citing *Alford* at 36-37. To ensure a voluntary, knowing, and intelligent plea, a trial court must comply with Crim.R. 11(C), which lists the rights a court must explain to a defendant before accepting a plea. *State v. Duhart,* 6th Dist. Lucas No. L-16-1283, 2017-Ohio-7983, ¶ 8; Crim.R. 11(C); *see also State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17 (requiring demonstration of prejudice where the trial court fails to fully comply with the rule and no exceptions apply). In addition to this explanation of rights, the court must also ensure that, "notwithstanding the defendant's protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor." *Willis* at ¶ 6, quoting *State v. Padgett,* 67 Ohio App.3d 332, 338, 586 N.E.2d 1194 (2d Dist.1990).

{¶ 17} An *Alford* plea is knowing, intelligent, and voluntary where "the record affirmatively discloses that: (1) a guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) his advice was competent

6.

in light of the circumstances surrounding the plea; (4) the plea was made with the understanding of the nature of the charges; and, (5) the plea was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both[.]" *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852, 855 (1971), syllabus.

{¶ 18} In this case, appellant does not challenge the trial court's compliance with Crim.R. 11(C) or argue prejudice based on the trial court's lack of full compliance with the rule. Instead, appellant argues his trial counsel coerced his plea, relying on his prior rejection of the plea and his claims of ineffective assistance of counsel to demonstrate coercion and that his trial counsel was not competent in light of the circumstances surrounding the plea. Appellant cites to nothing within the record that supports his theory of coercion or incompetence of trial counsel.

{¶ 19} The record in this case demonstrates the state offered appellant the same plea deal, but he rejected the deal and it expired on February 28. After expiration of the deal, appellant's father returned from international travel and participated in the discussions of appellant's case. Appellant's trial counsel indicated appellant's parents were persuasive, stating:

> I believe [the state's recitation of the plea agreement] is accurate, and as to the 11th hour nature of this, I will say that my – my client who is very young, his parents have been involved throughout this case, they've been involved in most of the discussions I've had with him and his prior counsel. His father was traveling internationally; it's the first time from the

7.

date of our final pretrial until today that his – his father was back in the country. At a reasonable hour, they came to the office was last night, so we met last night. We had a lengthy meeting, a lengthy dis – a lengthy set of intense discussions, and we arrive at this conclusion hoping the offer – the Bench will allow us to proceed in this manner.

**{¶ 20}** Based on this representation, the trial court inquired of the state whether it would re-offer "what was the original offer," and the state informed the court it was re-offering the plea agreement, which appellant now wished to accept.

The trial court then engaged in the following exchange with appellant:

THE COURT:        All right. Mr. Graham, do you understand what's being presented to me today?

THE DEFENDANT:        I do, Your Honor.

THE COURT:        And that we were in court on February 27th, at which time you rejected this offer?

THE DEFENDANT:        Correct.

THE COURT:        And you've now changed your mind?

THE DEFENDANT:        Yes.

THE COURT:        So tell me in your own words what's going to – procedurally what would happen today.

THE DEFENDANT:        What would happen today, I would still pursue this – this plea, I would still pursue this plea.

THE COURT: Okay. But, I mean, we're here in court and they told me what they want to do. You tell me in your words what would you be doing today in this process.

* * *

Tell me in your own words – don't look at the form, what – what is – what does it mean? Are we going to have a trial?

THE DEFENDANT: We're not going to have a trial, like, with public, you know, a jury.

THE COURT: Okay. What kind of trial are we going to have?

THE DEFENDANT: A trial that's like – similar to this.

THE COURT: Okay. And so there would be witnesses at that trial?

THE DEFENDANT: There would not be.

THE COURT: Why?

THE DEFENDANT: Because there would be…I'm not sure.

THE COURT: Okay. What they're suggesting to me is that we won't have a trial, not only public or private or any other way; this case is going to, essentially, settle today. There won't be a trial. You're entering a no – a guilty plea pursuant to Alford, and then we would set it for sentencing, meaning, a punishment hearing in the future.

Is that your understanding of what's going on?

THE DEFENDANT: Yes, yes –

THE COURT:     Okay.

THE DEFENDANT:     – Your Honor.[2]

THE COURT:     And, again, you rejected that offer on February 27th?

THE DEFENDANT:     Correct.

THE COURT:     All right. Mr. Graham, you and I are going to walk through this form, this plea of guilty Felony 3.

{¶ 21} After addressing the terms of the plea agreement on the record, the trial court again addressed appellant as follows:

THE COURT:     Okay. Now, we're – I'm – I'm done to par – labeled Paragraph 1.

By entering this plea of guilty, you do not admit committing the offense, but you enter this plea only to avoid the risk of conviction on a more serious offense or harsher sentence if you went to trial on the original charges and the possibility of a higher penalty as a result.

Is that a correct statement?

THE DEFENDANT:     Yes.

THE COURT:     Do you have any questions for me about what that statement means?

THE DEFENDANT:     I do not.

---

[2] Later in the hearing, appellant's trial counsel clarified that "my client in talking to him has referred to, essentially, any hearing in the courtroom as a trial."

{¶ 22} The trial court then confirmed that appellant had sufficient time to review the plea form with his trial counsel, and addressed the potential prison term for each count, noting appellant's maximum possible sentence was an aggregate term of 72 months. The trial court also addressed the license suspension, potential financial sanctions, and potential community control sanctions, and informed appellant of the constitutional rights he waived by entering his *Alford* plea, with appellant voicing understanding as to each of the rights he waived.

{¶ 23} The trial court also questioned appellant regarding his willingness and competence to enter his plea, as follows:

THE COURT:     Have any promises been made to you regarding your plea other than are written in this document?

THE DEFENDANT:     No.

THE COURT:     Have any threats been made to you to enter into this guilty plea?

THE DEFENDANT:     No.

THE COURT:     Are you drug dependent or in danger of becoming drug dependent?

THE DEFENDANT:     No.

THE COURT:     Are you under the influence of drugs or alcohol today?

THE DEFENDANT:     No.

THE COURT:     Do you take prescription medicine?

11.

THE DEFENDANT:        No.

THE COURT:        How many years of school did you complete?

THE DEFENDANT:        All 12. I graduated.

THE COURT:        What high school?

THE DEFENDANT:        Gibsonburg.

(Brief pause).

THE COURT:        Are you satisfied with [trial counsel's] representation of you?

THE DEFENDANT:        I am.

* * *

THE COURT:        All right. Now, you've indicated to me, Mr. Graham, that you are satisfied with your attorney's representation of you, right?

THE DEFENDANT:        Yes.

* * *

THE COURT:        And you've been able to go over everything that you want with [trial counsel]?

THE DEFENDANT:        Yes.

THE COURT:        There's nothing out there that bothers you, that nags in the back of your head, you're like, I've talked to him about everything I need and want to?

THE DEFENDANT:        Yes.

THE COURT: Okay. Would you say that you're entering this plea of guilty of your own free will and choice, Mr. Graham?

THE DEFENDANT: I am.

{¶ 24} After the state recited the facts that would have been proven at trial, the trial court asked appellant, once more, whether he wished to enter a plea, and appellant confirmed his desire to do so. The trial court accepted the plea and found appellant guilty.

{¶ 25} Considering the lengthy colloquy between the trial court and appellant about his change of heart in accepting the plea, we find no indication of coercive conduct by the state, the trial court, or appellant's trial counsel that induced appellant to enter a plea he would otherwise have rejected. Furthermore, appellant ignores the role his parents played in the decision to accept the plea, as stated on the record by his trial counsel during the plea hearing.

{¶ 26} Appellant also argues that his trial counsel's failure to pursue an evidentiary challenge to the state's scientific evidence played a part in inducing him to accept the plea. The trial court, however, asked appellant about his satisfaction with counsel's performance and appellant informed the court he was satisfied and had discussed all he wished to discuss with his attorney. When further pressed, appellant stated that there was nothing out there that "nags in the back of your head" as a matter appellant needed to discuss with his trial counsel.

{¶ 27} Considering the record, there is no indication of "trickery, deception or intimidation" that caused appellant to accept the plea. *See State v. Qualls,* 6th Dist.

13.

Ottawa Nos. OT-18-035, OT-18-040, 2020-Ohio-3753, ¶ 44, quoting *Piacella,* 27 Ohio St.2d at 93, 271 N.E.2d 852. Appellant's claim of coercion, moreover, is based on the *potential* challenge to the state's evidence and not any misrepresentation, by his trial counsel, of the state's evidence. Furthermore, appellant accepted the state's recitation of the facts it would prove, had the case proceeded to trial, and otherwise indicated he was satisfied with his trial counsel's advice and performance. Appellant's subsequent belief that there was a potential challenge to the state's evidence does not render his plea invalid. *See, e.g., Piacella* at 94, quoting *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (A plea is not invalidated by a defendant's failure to "correctly assess every relevant factor" or "because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case[.]").

{¶ 28} Thus, there is nothing in the record supporting appellant's claim of coercion, and no challenge to the trial court's compliance with Crim.R. 11(C). We therefore find appellant's first assignment of error not well-taken.

### B. The trial court did not abuse its discretion in denying the motion to withdraw plea, without hearing.

{¶ 29} In his second and third assignments of error, appellant argues the trial court abused its discretion in denying his motion to withdraw the plea, without hearing. Appellant argues that his plea was not knowing, intelligent, or voluntary based on his trial counsel's ineffectiveness in failing to challenge the state's evidence and proposed expert

14.

testimony. He also argues that a hearing was necessary to address his motion, because the facts alleged in his motion, taken as true, would have required withdrawal of his plea.

{¶ 30} We review the trial court's decision, denying a post-sentence motion to withdraw a guilty plea, for an abuse of discretion. *See State v. Cooke,* 6th Dist. Fulton No. F-23-002, 2023-Ohio-4679, ¶ 14, citing *State v. Davis,* 2020-Ohio-4539, 159 N.E.3d 331, ¶ 21 (6th Dist.); *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). An abuse of discretion connotes "that the court's attitude is unreasonable, arbitrary, or unconscionable." (Citation omitted) *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Thus, the trial court resolves matters regarding "the good faith, credibility and weight of the movant's assertions in support of the motion[.]" *State v. Smith,* 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977).

{¶ 31} Appellant's motion to withdraw his guilty plea is governed by Crim.R. 32.1, which permits withdrawal of a plea, after imposition of sentence, to correct manifest injustice. A manifest injustice "relates to a fundamental flaw in the proceedings resulting in a miscarriage of justice[.]" (Citations omitted) *State v. Straley,* 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 14. "The term 'has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases.'" *Straley* at ¶ 14, quoting *Smith* at 264.

{¶ 32} In this case, appellant argued manifest injustice based on his trial counsel's ineffective assistance. Specifically, appellant argues counsel was ineffective in failing to challenge the state's scientific evidence by motion. "When a defendant alleges ineffective

15.

assistance of counsel arising from the plea process, the defendant must meet the two-prong test set out in *Strickland* [*v. Washington*], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674." *State v. Romero,* 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, ¶ 14, citing *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (additional citation omitted.). This consideration is separate from review of a court's duty to ensure a knowing, voluntary plea, arising from "the constitutional guarantee of due process." *Romero* at ¶ 18. A "counsel's duty to provide competent advice during the plea proceedings arises from a separate constitutional guarantee – the Sixth Amendment right to counsel." *Id.,* citing *Missouri v. Frye,* 566 U.S. 134, 141, 132 S.Ct. 1399, 182 L.Ed.2d 370 (2012).

{¶ 33} We presume a properly licensed attorney is effective in his or her representation of a defendant. *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). To prevail on a claim of ineffective assistance of counsel, appellant must overcome this presumption and demonstrate "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688.

{¶ 34} Applying the *Strickland* test to representation during the plea process, a court must first consider whether counsel gave competent advice. *Romero* at ¶ 23. In his motion, appellant argued his trial counsel recommended a plea without taking "any steps

16.

at all to challenge the admissibility of evidence against him." He argued his trial counsel did not challenge the "unreliable and untrained claims regarding [his] speed; the data from the vehicles' black boxes, and the accident reconstruction."

{¶ 35} The trial court rejected this argument, finding appellant's characterization of the record misleading. The trial court noted appellant's first appointed counsel requested a competency evaluation, which revealed appellant was competent to stand trial. His first counsel then requested approval to hire an accident reconstruction expert, which the trial court granted. This expert apparently completed the analysis, as the trial court subsequently approved payment for the expert. Plea negotiations also began during the representation of appellant's first attorney, with no dispute of the state's claim that it offered an identical plea through both of appellant's attorneys. Citing a breakdown with the client, appellant's first attorney filed a motion to withdraw and the court appointed new counsel, who had access to the discovery in appellant's case, participated in pretrials over several months, and finalized negotiation of the plea.

{¶ 36} The trial court determined appellant's claims regarding potential challenges to the state's scientific evidence lacked "specifics," considering the defense "had the benefit of their own expert and although no motions challenging the evidence were filed there is nothing presented in the motion to withdraw the plea to indicate that the scientific data was incorrect." The trial court also noted that a failure to "do more" is not the equivalent of ineffective assistance. The trial court reasoned:

17.

Two practicing criminal defense attorneys reviewed the State's case and the defendant had the benefit of their counsel. There are a multitude of reasons why trial counsel would choose to not file pre-trial motions but the fact that they did not, absent some tangible arguable issue, establishes nothing.

{¶ 37} In arguing a potential challenge to the state's scientific evidence, appellant fails to address all the evidence obtained by the defense, including his own expert's data and conclusions, and fails to articulate an actual issue that could have been challenged based on the information available prior to the plea. Instead, appellant relies on general argument that his trial counsel just accepted the state's scientific findings rather than diligently pursue possible defenses. As evidenced by the record, appellant's counsel had a defense expert independently evaluate the scientific data, belying appellant's characterization of a "lack of performance or diligence." Appellant also only proffers argument and conclusory statements that his counsel was ineffective, with no articulation of concrete facts to support these statements.

{¶ 38} Considering the record, there is nothing to demonstrate deficient representation by either of appellant's appointed counsel, with each of appellant's attorneys pursuing plea negotiations with the state with the benefit of discovery and a defense expert's findings. "Generally speaking, trial counsel's negotiation of a plea bargain is usually a 'trial tactic.'" *State v. Rivera,* 6th Dist. Wood No. 2021-Ohio-1343, ¶ 12, citing *State v. Bird,* 81 Ohio St.3d 582, 585, 692 N.E.2d 1013 (1998). Furthermore, as to the plea negotiations, appellant challenges only his trial counsel's failure to pursue

18.

possible defenses, with no claim that his trial counsel misrepresented the facts or law to appellant, or withheld important facts regarding possible defenses. As such, appellant fails to demonstrate inefficient assistance based on general argument of matters that fall within trial strategy, as even "debatable trial tactics" will not establish deficient representation, necessary to satisfy the test under *Strickland. See Rivera* at ¶ 12.

{¶ 39} Finally, appellant argues that the trial court abused its discretion by denying his motion to withdraw the plea without a hearing. As previously addressed, appellant articulated no factual basis for challenging his trial counsel's performance in failing to file a motion to challenge the evidence, relying instead on general argument without the support of specific facts. Without a factual basis, the trial court had nothing to consider in an evidentiary hearing. "No hearing is required on a post-sentence motion under Crim.R. 32.1, unless the facts as alleged by the appellant, taken as true, would require the trial court to permit withdrawal of the plea." *State v. Davis,* 6th Dist. No. L-19-1298, 2020-Ohio-4539, 159 N.E.3d 331, ¶ 23, citing *State v. Blatnik*, 17 Ohio App.3d 201, 204, 478 N.E.2d 1016 (6th Dist.1984).

{¶ 40} Having considered the record, the argument of counsel, and applicable law, we find the trial court was within its discretion to deny appellant's post-sentence motion to withdraw his plea, without hearing. Accordingly, we find appellant's second and third assignments of error not well-taken.

19.

## V. Conclusion

**{¶ 41}** Having found substantial justice has been done, we affirm the judgment of the Sandusky County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.