[Cite as *State v. Baker*, 2022-Ohio-1853.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2021-0041 |
| TRISTANEY BAKER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  CR2021-0262


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 1, 2022


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

RONALD L. WELCH                       PETER GALYARDT
PROSECUTING ATTORNEY                  ASSISTANT PUBLIC DEFENDER
TAYLOR P. BENNINGTON                  250 East Broad Street
ASSISTANT PROSECUTOR                  Suite 1400
27 North Fifth Street, P. O. Box 189  Columbus, Ohio  43215
Zanesville, Ohio  43702-0189

*Wise, P. J.*

**{¶1}** Defendant-Appellant Tristaney Baker appeals her conviction and sentence entered in the Muskingum County Court of Common Pleas, following a plea of guilty.

**{¶2}** Plaintiff-Appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On April 27, 2021, officers with the Zanesville Police Department were dispatched to 46 South Sixth Street, Apartment 2, in Zanesville, Ohio, at approximately 7:00 p.m., in reference to a woman who had been shot.

**{¶5}** The caller, Patrick Downs, stated he had just arrived back at his apartment and found the woman dead in the apartment. Upon arrival, the officers found that the victim had been shot multiple times. Six 9-millimeter shell casings were located at the scene. No gun was located at that time.

**{¶6}** Detective Chris Andrews spoke with Mr. Downs, who identified the victim as Jayla Wyatt. Downs told the police that Ms. Wyatt had recently started staying with him, and that he believed that the person who shot her was his girlfriend, Kristin Baker. Downs stated that earlier in the day he had talked with Kristin and she told him that she would be over later to pick up some personal belongings. It was later determined that Kristin's real name was Tristaney Baker.

**{¶7}** Downs told the officers that before the incident had occurred, he was told that Kristin was outside his apartment building. He stated he went outside about five minutes later and he and Kristin had a conversation in his car and then she left.  He told

the police that he had been gone for approximately forty-five minutes when he received a call from Michael Seevers telling him that Jayla was dead in his apartment.

{¶8} Downs stated that Kristin and Jayla had verbal altercations within the past week and were feuding. He stated that the day before, Appellant had come to his apartment, caused a disturbance, and ended up breaking a window to the apartment before she left. Downs told the police that Kristin was driving a blue car that is owned by her current boyfriend, whose name he did not know.

{¶9} While conducting interviews in this area, Detective McElhaney spoke to a woman that was exiting a business near the 46 South Sixth Street apartment building at the time of the incident. She was walking in the parking area between the two buildings to go to her vehicle. While she was attempting to cross the alley, a two-door sports car, robin egg blue in color, drove south in the alley in the rear of 46 South Sixth Street. The blue vehicle then backed in to the rear of the building and parked near the dumpster. The witness observed a young, white male having short light-colored hair possibly wearing a blue hoodie in the driver's seat. She noticed that the front bumper of the car on the driver's side had something hanging down from it. Continuing to her car, she heard three to four, what she believed to be, gunshots. She then began walking back to the rear of the neighboring business. As she was crossing in front of the blue car, she observed a brown and white pit bull come running from the rear of 46 South Sixth Street. She observed a female exit from the same location describing the female 5-4 to 5-5 height, extremely skinny, wearing shorts and possibly a hoodie, and having dirty blonde or light brown hair. She stated the female went to the blue car and opened the door. At that time the witness asked this female if the dog was hers, and the female replied no. The female got into the

vehicle and left going south in the alley. Located directly behind the 46 South Sixth Street apartment building is a dance studio business with outside surveillance cameras. Surveillance video showed a blue car, as described by the witness, parked in the parking lot apartments at the dumpster. Video shows a skinny female wearing shorts and hoodie exit the vehicle and go towards the apartment building. A short time later, she is again observed returning quickly back to the vehicle.

{¶10} While detectives are on scene, Denzil Wilson arrived at the apartment building. He stated that he and Jayla were on-again-off-again boyfriend and girlfriend. He stated he had gone to Downs' apartment the day prior to try to get Jayla to leave, but she would not go with him. He further stated that Patrick's ex-girlfriend is a female by the name of Tristaney Baker, who lives in Columbus, and knew that she had been back within the last few weeks to visit this apartment.

{¶11} Evidence was collected at the scene, including DNA and biological evidence, and six (6) spent 9-millimeter shell casings which were collected from the entryway of the apartment in to the living room area. A cell phone was also located. The screen of the phone had a photo of two small children belonging to Jayla Wyatt.

{¶12} Detective Andrews received written consent from Patrick Downs to have a forensic download of his cell phone, where they obtained a number for Kristin with a "K". Upon download, the photo of the person utilizing the 614 number that was found under "K" in Patrick Downs' phone matched the description given of the suspect and OHLEG (Ohio Law Enforcement Gateway) photograph of Tristaney Cheylynn Baker. The address attached to her phone and phone number was 73 Mayfield Boulevard in Columbus, Ohio.

{¶13} Detective Andrews conducted an audio-video, recorded interview with Denzil Wilson. Police also recovered Wilson's phone, which showed that there was a call between Tristaney Baker and Denzil Wilson just after the incident. An exigent circumstance order was obtained by Detective Sergeant Phil Michel for the phone number belonging to Tristaney Baker. The order revealed the number was active in cell towers in the area of State Route 13 near Hupp Road just after the shooting. The exigent order also showed the current location of the phone to be at 73 Mayfield - Mayfair Boulevard, Apartment C, in Columbus, Ohio. A complaint was then filed for Tristaney Baker for murder.

{¶14} Columbus Police Department went to the residence and took Tristaney Baker into custody. Also at the residence was Devin McKnelly, Tristaney Baker's boyfriend. No firearms were recovered at that location. Devin McKnelly was driving a blue in color Honda car, which was located near the apartment and was taken in to evidence. The vehicle matched the vehicle seen in the security video leaving the scene of the shooting.

{¶15} Detective Andrews located an address for Emily McKnelly at 7606 Hupp Road in Thornville in Licking County. This address was near where the pings from the exigent order were coming from just after the shooting. Devin McKnelly indicated he had a room at that residence.

{¶16} On April 28, 2021, Detective Andrews went to the Hupp Road, Thornville, address and spoke to Delana Nelson. Delana Nelson advised that she was house-sitting for Emily McKnelly and her son. Detective Andrews asked if Devin McKnelly had been to

the house. She stated that he had been to the house with Tristaney about 6 to 7 p.m. on April 27th. Delana recalled that Devin had gone up to his room and left a short time later.

{¶17} On April 28, 2021, the police also interviewed Kayla Craig wherein she stated that Appellant admitted to shooting a girl about ten times. Craig described that Appellant was jealous of the girl in reference to a drug-dealer boyfriend. Appellant told her she shot the victim in the thigh and just kept shooting until she was out of bullets. Appellant also said that the girl that was there had a pit bull. Craig described Appellant as being proud of what had occurred and showing no remorse. Craig also stated that Devin McKnelly told her that he got Appellant the gun and she believed that he got it from his mom's house.

{¶18} On April 28, 2021, Devin McKnelly was interviewed by detectives. He initially denied having any knowledge of the homicide, later admitting that he obtained the firearm for Appellant, provided her with transportation from Columbus to Thornville to get the gun and then from Thornville to Zanesville. He stated that Appellant had said that she wanted to shoot Wyatt, although he believed that she was joking. He stated that he took a ride back to Thornville where he then concealed the gun in a shoebox in his brother's closet. He then returned to Columbus with Appellant.

{¶19} Appellant denied being involved in the shooting. Located in the vehicle that was searched by BCI were latex gloves which appeared to have gunshot residue between the thumb and forefinger.

{¶20} The autopsy determined that the victim had suffered from six gunshot wounds, several to the legs, body, and one directly to the face. This all occurred in Muskingum County.

**{¶21}** On May 13, 2021, Appellant was indicted on the following counts:

Count 1:      Aggravated Murder (firearm specification), unclassified felony, R.C. §2903.01(A); R.C. §2941.145.

Count 2:      Aggravated Murder (firearm specification), unclassified felony, R.C. §2903.01(B); R.C. §2941.145.

Count 3:      Aggravated Burglary (firearm specification), felony of the first degree, R.C. §2911.11(A)(2).

Count 4:      Tampering with Evidence, felony of the third degree, R.C. §2921.12(A)(1).

Count 5:      Possession of Criminal Tools, felony of the fifth degree, R.C. §2923.24(A).

**{¶22}** On May 17, 2021, Appellant entered a plea of guilty to all counts. The trial court ordered a pre-sentence investigation and set the matter for a sentencing hearing.

**{¶23}** On June 28, 2021, a sentencing hearing was held. The trial court merged Counts 1 and 2 for purposes of sentencing and sentenced Appellant as follows:

Count 1:      Mandatory prison term of life in prison without the possibility of parole

Specification: Mandatory prison term of three (3) years

Count 3:      Prison term of eleven (11) years

Specification: Mandatory prison term of three (3) years

Count 4:      Prison term of thirty-six (36) months

Count 5:      Prison term of twelve (12) months

**{¶24}** The court ordered the terms of incarceration to be served concurrently with one another, the firearm specifications shall both be served mandatory consecutive to each other and count one for an aggregate mandatory sentence of life in prison without the possibility of parole plus six (6) years.

**{¶25}** Appellant now appeals, raising the following assignments of error for review:

### ASSIGNMENTS OF ERROR

**{¶26}** "I. TRISTANEY BAKER RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION.

**{¶27}** "II. TRISTANEY BAKER'S SENTENCE IS UNCONSTITUTIONAL. FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION."

### I.

**{¶28}** In her first assignment of error, Appellant argues she was denied the effective assistance of trial counsel. We disagree.

**{¶29}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether the Appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶30}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

**{¶31}** In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley, supra* at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**{¶32}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 42 Ohio St.3d 136, 538 N.E.2d 373, quoting *Strickland* at 697, 466 U.S. 668, 104 S.Ct. 2052. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

**{¶33}** Here, Appellant argues that trial counsel's failure to request a competency evaluation constituted ineffective assistance of counsel.

**{¶34}** A defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against him. *State v.*

*Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 82, *citing Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

**{¶35}** R.C. § 2945.37(A) provides that "[a] defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his present mental condition he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting his defense."

**{¶36}** R.C. §2945.37(B) entitles the defense to a pretrial competency hearing upon request: "In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court *shall* hold a hearing on the issue as provided in this section." (Emphasis added.) Defense counsel is not ineffective in failing to request that the trial court order a competency evaluation or hold a competency hearing when the defendant does not display sufficient indicia of incompetency to warrant a competency hearing. *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216 citing *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 41.

**{¶37}** In the context of a criminal trial, a trial court's failure to hold a competency hearing does not rise to constitutional proportions unless the record contains sufficient indicia of incompetency. *State v. Bock* (1986), 28 Ohio St.3d 108, 502 N.E.2d 1016. According to *Bock,* "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.* at 110, 502 N.E.2d 1016.

**{¶38}** Upon review, we find Appellant is unable to demonstrate he was prejudiced by counsel's failure to request a competency evaluation. Accordingly, this argument fails under the second prong of *Strickland, supra,* and *Bradley, supra.*

**{¶39}** We find that the record contains insufficient indicia of incompetence to require a competency evaluation or a competency hearing. Nothing in the presentence investigation demonstrates Appellant's mental health issues rose to the level of incompetence to stand trial. Rather, the record reveals that Appellant planned the victim's murder, she employed her boyfriend to obtain a gun for her, she waited until there were no witnesses around and then broke into the apartment and shot the victim six times. She had her boyfriend waiting as her getaway driver, and they took the gun and hid it out of town before returning to Columbus. Appellant then bragged about the murder to a friend, which included such details as the victim having a pit bull and that she just kept shooting until she ran out of bullets.

**{¶40}** Even if defense counsel had requested a competency evaluation and the trial court had held a hearing, the alleged indicia of incompetence that counsel for Appellant repeatedly cites would have been insufficient to overcome the legal presumption of competence, because such does not suggest that Appellant was incapable of understanding the nature and objective of the proceedings against her or of assisting in her own defense.

**{¶41}** Accordingly, the record does not show a reasonable likelihood that the trial court would have found Appellant incompetent to stand trial.

**{¶42}** Appellant also argues that trial counsel was ineffective for failing to support his mitigation arguments with a psychological report or evaluation.

**{¶43}** Upon review, we find that trial counsel in this matter presented extensive mitigating evidence focused on Appellant's dysfunctional family and upbringing, alleged abuse, and traumatic events in her life. Further, defense counsel successfully negotiated a sentence that did not include the death penalty.

**{¶44}** Based on the foregoing, we find Appellant has not demonstrated counsel's performance fell below a reasonable standard of representation, nor has Appellant demonstrated had counsel moved for a competency evaluation, she would have been found incompetent to stand trial.

**{¶45}** Appellant's first assignment of error is overruled.

## II.

**{¶46}** In her second assignment of error, Appellant argues that her sentence is unconstitutional. We disagree.

**{¶47}** This Court reviews felony sentences using the standard of review set forth in R.C. §2953.08. *State v. Roberts,* 5th Dist. Licking No. 2020 CA 0030, 2020-Ohio-6722, ¶13, *citing State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. R.C. §2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. §2929.13(B) or (D), §2929.14(B)(2)(e) or (C)(4), or 2§929.20(1), or the sentence is otherwise contrary to law. *Id.*, *citing State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

**{¶48}** When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. §2929.11 and the seriousness and recidivism factors in R.C. §2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

**{¶49}** "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. §2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. §2929.11(B).

**{¶50}** R.C. §2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. §2929.11 and R.C. §2929.12.

**{¶51}** Nothing in R.C. §2953.08(G)(2) permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to determine a sentence which best reflects compliance with R.C. §2929.11 and R.C. §2929.12. *State v. Jones*, 169 N.E.3d 649, 2020-Ohio-6729, ¶ 42. Instead, we may only determine if a sentence is contrary to law. *State v. Pettorini*, 5th Dist. Licking No. 2020 CA 00057, 2021-Ohio-1512, ¶ 15

**{¶52}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. §2929.11, as well as the factors listed in R.C. §2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *Id.* at ¶¶ 14-16, *quoting State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 & CA2019-03-026, 2019-Ohio-4209, ¶ 36.

**{¶53}** In this case, the Sentencing Entry states the Court considered the record, all statements, any victim impact statement, the plea recommendation in this matter, as well as the principles and purposes of sentencing under Ohio Revised Code §2929.11 and its balance of seriousness and recidivism factors under Ohio Revised Code §2929.12.

**{¶54}** The court noted that Appellant had previously been found guilty of two (2) unclassified felonies, one (1) felony of the first degree, one (1) felony of the third degree and one (1) felony of the fifth degree.

**{¶55}** The court also made Judicial Findings that the Appellant had a warrant for her arrest for a crime of violence when she committed this murder, that she assaulted another inmate while in the jail, and that she shows no remorse.

**{¶56}** During sentencing, the trial court addressed the pre-sentence investigation:

THE COURT: I would like to note a few things that were noted in the presentence investigation. One, at the time of committing this offense there was a warrant for your arrest out of Licking County for assaulting the co-defendant and then the nurses at the hospital and then the correction officers and the officers who came to arrest you. You've been put in lockdown in the jail at least two different occasions that I'm aware of. And

you were still in lockdown when you were going through the -- when you committed your last -- you were in a lockdown cell when you assaulted another defendant, and your comment was: The bitch deserved it. She's been making me mad all day. I don't care. I'm in here for murder. I'll kill another bitch. She was taken to the hospital and had stitches in her head.

That does not show remorse, it doesn't show that you're sorry, and it does show why society needs to be protected from you.

You were taken away from your mother at age 11 because you committed domestic violence. You were charged with it. There aren't too many 11-year-olds going around committing domestic violence on their mothers. I see people through here all the time who have had as bad an experience as you've had in the foster care system. Some of them commit crimes. Some of them become very good people because they were victims of crimes. You have gone the other way and you took this girl's life. And during the plea, you wanted to make sure your attorney corrected the record so everybody in the room knew that you had told Pat Downs the day before you were going to go kill her if she was still there. That's not the attitude of somebody who's just mad and angry. That's just a bad attitude.

**{¶57}** (Sent. T. at 17-18).

**{¶58}** The trial court then imposed a sentence within the statutory range for the offenses. The court further found, "Your attitude before, during, and after this warrants that. You show no respect for human beings, let alone their lives. And with an attitude like that and a history like that, that's the only appropriate sentence that I find." *Id.* at 19.

{¶59} Based on the foregoing, we find the sentences imposed are not clearly and convincingly contrary to law in the instant case, and thus we do not have authority to disturb the sentence on appeal.

{¶60} Appellant's second assignment of error is overruled.

{¶61} The judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/kw 0525