[Cite as *State v. McKnelly*, 2024-Ohio-2696.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2024-0003 |
| DEVIN MCKNELLY | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum Court of
                             Common Pleas, Case No. CR2021-0276

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 16, 2024

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOSEPH A. PALMER                          JOHN RUTAN
27 North Fifth Street                     336 South High St.
Zanesville, OH 43701                      Columbus, OH 43214

*Gwin, P.J.*

{**¶1**}    In exchange for the state's agreement to dismiss several felony charges and firearm specifications, and also to jointly recommend a sentence of life in prison with parole eligibility after twenty years, defendant-appellant Devin C. McKnelly ["McKnelly"] with retained counsel, entered a negotiated guilty plea to one count of aggravated murder in 2021. His pro se petition for post-conviction relief was denied August 25, 2022. McKnelly did not appeal that decision. On November 6, 2023, McKnelly, through retained counsel, filed a motion to withdraw his guilty plea. The trial judge denied the motion without a hearing on December 22, 2023.

{**¶2**}    Retained counsel filed an appeal. On appeal, McKnelly contends that the trial judge erred by not granting his post sentence motion to withdraw his negotiated guilty plea, and also, that he received ineffective assistance from his trial counsel.

{**¶3**}    Because we find that McKnelly has failed to demonstrate a manifest injustice such that a fundamental flaw occurred in the proceedings resulting in a miscarriage of justice, or is inconsistent with the demands of due process, and further has failed to demonstrate that trial counsel rendered constitutionally deficient performance with respect to the plea, we affirm the judgment of the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{**¶4**}    On May 19, 2021, McKnelly was indicted on the following counts,

Count 1: Aggravated Murder (firearm specification), unclassified felony, R.C. § 2903.01(A); R.C. § 2941.145;

Count 2: Aggravated Murder (firearm specification), unclassified felony, R.C. § 2903.01(B); R.C. § 2941.145;

Count 3: Aggravated Burglary (firearm specification), felony of the first degree, R.C. § 2911.11(A)(2); R.C. § 2941.145;

Count 4: Tampering with Evidence, felony of the third degree, R.C. § 2921.12(A)(1); and

Count 5: Possession of Criminal Tools, felony of the fifth degree, R.C. § 2923.24(A).

{¶5} The facts giving rise to the indictment were set forth on the record at McKnelly's change of plea hearing as follows.

{¶6} On April 27, 2021, officers with the Zanesville Police Department were dispatched to 46 South Sixth Street, Apartment 2, in Zanesville, Ohio, at approximately 7:00 p.m., in reference to a woman who had been shot. *T. Change of Plea,* May 24, 2021 at 11. The deceased person was identified as J.W. Id. She died of multiple gunshot wounds. The caller identified the shooter as Tristaney Baker[1]. Id. He further claimed that Baker was in a relationship with McKnelly. The caller further told police that Baker had come down the day before and caused a disturbance, breaking a window. The caller told the police that Baker was driving a blue car that is owned by her current boyfriend, McKnelly.

{¶7} Police also spoke to a woman that was exiting a business near where the shooting had occurred. Id. at 11-12. While she was attempting to cross the alley, a two-door sports car, robin egg blue in color, drove south in the alley in the rear of 46 South

---

[1] This Court upheld Baker's convictions and sentences. See, *State v. Baker,* 2022-Ohio-1853 (5th Dist.).

Sixth Street. The blue vehicle then backed in to the rear of the building and parked near the dumpster. The witness observed a young, white male having short light-colored hair possibly wearing a blue hoodie in the driver's seat. She noticed that the front bumper of the car on the driver's side had something hanging down from it. Id. at 12. She then heard three to four, what she believed to be, gunshots, and looked back toward the rear of 46 South Sixth Street where she observed a female exit from that location. She stated the female went to the blue car and opened the door. A dog had come running out of the alleyway and the witness asked the female if the dog was her dog. The female replied it was not, got into the car and left.

{¶8} Surveillance video showed a blue car, as described by the witness, parked in the parking lot apartments at the dumpster. Video shows a skinny female wearing shorts and hoodie exit the vehicle and go towards the apartment building. A short time later, she is again observed returning quickly back to the vehicle. *T. Change of Plea,* at 13.

{¶9} When Baker was later arrested, McKnelly was also inside the apartment. Id. at 14. He too was taken into custody. McKnelly was in possession of a blue in color Honda car, that matched the vehicle seen in the security video leaving the scene of the shooting. Id. at 15.

{¶10} The police also interviewed K.C. who told them that Baker admitted to shooting a girl about ten times. Id. at 15. K.C. described Baker as jealous of the girl in reference to a drug-dealer boyfriend. Baker told her she shot the victim in the thigh and just kept shooting until she was out of bullets. K.C. described Baker as being proud of what had occurred and showing no remorse. K.C. also stated that McKnelly told her that

he got Baker the gun and she believed that he got it from his mom's house. *T. Change of Plea* at 15.

{¶11} McKnelly was interviewed by detectives. He initially denied having any knowledge of the homicide, later admitting that he obtained the firearm for Baker, provided her with transportation from Columbus to Newark to get the gun and then from Newark to Zanesville. Id. at 15-16. He stated that Baker had said that she wanted to shoot the victim, although he believed that she was joking. He told the police where they could find the handgun used in the shooting. Inside McKnelly's car, the police found a sweatshirt with blood on it, and a pair of white latex gloves with residue consistent with gunshot residue. Blood was also found on the outside of the car. Id. at 16.

{¶12} On May 24, 2021, McKnelly executed a written Plea of Guilty form that specified,

> Upon a plea of "guilty" to Count One as contained in the indictment, the parties agree to a joint recommendation that Defendant be sentenced to life in prison, with the possibility of parole after twenty (20) years. The State agrees to dismiss all remaining Counts of the indictment at the time of sentencing.

Emphasis in original. McKnelly entered a plea to one count of aggravated murder with the possibility of parole after twenty years on May 24, 2021.

{¶13} The trial judge sentenced McKnelly on June 28, 2021 to a term of 15 years to life. A nunc pro tunc sentencing entry was filed on July 13, 2021 to clarify the parole possibility to be after twenty years.

{¶14} On July 25, 2022, McKnelly, pro se, filed motions with the trial court to vacate or set aside his sentence, for appointment of counsel and for expert assistance. All motions were denied without a hearing by Judgment Entry filed August 25, 2022. McKnelly did not appeal.

{¶15} On November 6, 2023, McKnelly, through retained counsel, filed a motion to withdraw his guilty plea. The state filed a response on December 21, 2023. The trial judge denied the motion without hearing by Judgment Entry filed December 22, 2023.

{¶16} On January 10, 2024, McKnelly, through retained counsel, filed a Notice of Appeal purporting to appeal from the final judgment of sentencing on June 28, 2021 and the December 22, 2023 denial of the motion to withdraw his guilty plea. Also, on January 10, 2024, McKnelly filed a motion to file a delayed appeal seeking to appeal the trial court's final judgment entry of sentencing filed June 28, 2021. By Judgment Entry filed January 29, 2024, this Court denied McKnelly's motion to file a delayed appeal; however, the Court noted McKnelly's appeal from the trial court's entry denying the motion to withdraw his guilty plea was timely filed.

*Assignments of Error*

{¶17} McKnelly raises two Assignments of Error,

{¶18} "I. THE TRIAL COURT ERROED [sic.] BY NOT GRANTING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

{¶19} "II. THE APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE BY RUSHING A GUILTY PLEA."

I.

**{¶20}** In his First Assignment of Error, McKnelly contends the trial judge abused his discretion by overruling McKnelly's post sentence motion to withdraw his negotiated guilty plea. Specifically, McKnelly argues that the indictment lacks complicity language [Appellant's brief at 4]; the recitation of facts at the plea hearing do not adequately support an aggravated-murder guilty finding because merely providing someone with a gun and driving them to a place where someone was killed is not enough to sustain a conviction for aggravated murder, and, further, McKnelly believed the shooter was only joking about wanting to shoot the victim. [Appellant's brief at 5-7].

## Standard of Appellate Review

**{¶21}** Crim.R. 32.1 provides that a trial court may grant a defendant's post sentence motion to withdraw a guilty plea only to correct a manifest injustice. Therefore, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261(1977), paragraph one of the syllabus. *Accord, State v. Ahmed*, 2018-Ohio-181, ¶15 (5th Dist.). "A "manifest injustice" is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998), and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice, *State v. Tekulve*, 2010-Ohio-3604, ¶ 7 (1st Dist.), *citing Kreiner* at 208 and *Smith* at 264. The term "has been variously defined, but it is clear that under such standard, a post-sentence withdrawal motion is allowable only in extraordinary cases." *Smith* at 264.

**{¶22}** Although Crim.R. 32.1 does not provide a time limit for moving to withdraw after a sentence is imposed, "an undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the

credibility of the movant and militating against the granting of the motion." *Smith* at 264, *citing Oksanen v. United States*, 362 F.2d 74, 79 (8th Cir. 1966). And generally, res judicata bars a defendant from raising claims in a Crim.R. 32.1 post-sentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal. *See, State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶ 59.

{¶23} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus. Thus, we review a trial court's denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard. *Smith* at paragraph two of the syllabus; *State v. Francis*, 2004-Ohio-6894, ¶ 32; *State v. Straley,* 2019-Ohio-5206, ¶15. For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that "'it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *State v. Weaver,* 2022-Ohio-4371, ¶24 *quoting Spalding v. Spalding,* 355 Mich. 382(1959) at 384-385, *rejected in part by Maldonado v. Ford Motor Co.,* 476 Mich. 372, 388, (2006) ("we prefer the articulation of the abuse of discretion standard in [*People v. Babcock*, 469 Mich. 247, (2003)]").

{¶24} This Court has recognized that an abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 2014-Ohio-477, ¶35 (9th Dist.);

*In re Guardianship of S.H.*, 2013–Ohio–4380, ¶ 9 (9th Dist.); *State v. Firouzmandi,* 2006–Ohio–5823, ¶54 (5th Dist.).

**Issue for Appellate Review**: *Whether the trial judge abused his discretion by overruling McKnelly's post sentence motion to withdraw his negotiated guilty plea*

**McKnelly's Guilty Plea**

**{¶25}** A defendant has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751(1983); *Wainwright v. Sykes*, 433 U.S. 72, 93, n. 1 (1977) (Burger, C. J., concurring). A plea of guilty constitutes a complete admission of guilt. Crim. R. 11 (B) (1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce,* 488 U.S. 563, 570 (1989).

**{¶26}** Crim. R. 11 requires guilty pleas to be made knowingly, intelligently and voluntarily. The constitutional rights that the trial court must advise the defendant before accepting his or her plea are: (1) a jury trial; (2) confrontation of witnesses against him; (3) the compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney*, 2008-Ohio-5200, ¶ 19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. Id. at ¶ 31.

**{¶27}** The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible

for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no-contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a) / (b); *Veney* at ¶ 10-13; *State v. Sarkozy*, 2008-Ohio-509, ¶ 19-26, (post-release control is a non-constitutional advisement).

{**¶28**} For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15. Furthermore, a defendant who challenges his guilty plea on the basis that the advisement for the non-constitutional rights did not substantially comply with Crim.R. 11(C)(2)(a) / (b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶15; *State v. Stewart*, 51 Ohio St.2d 86, 93(1977).

{**¶29**} In addition, a written waiver of constitutional rights is presumed to have been voluntary, knowing, and intelligent. *State v. Turner*, 2005-Ohio-1938, ¶25; *State v. Clark*, 38 Ohio St.3d 252, 261 (1988); *see also*, *North Carolina v. Butler*, 441 U.S. 369, 374-375 (1979) (Reviewing a suspect's waiver of *Miranda* rights).

{**¶30**} McKnelly does not argue that the trial judge failed to comply with Crim R. 11's strict or substantial compliance requirements before accepting his guilty plea. McKnelly told the trial judge that he understood the plea agreement. T. *Plea,* May 24, 2021 at 6 - 8. The trial judge told McKnelly that he was not obligated to accept the joint sentencing recommendation. Id. at 9. The trial judge explained to McKnelly that he had the right to a jury trial or a trial to the court; the right to the confrontation of witnesses against him; that the state must prove his guilt beyond a reasonable doubt at trial; and

that he cannot be compelled to testify against himself. T. *Plea* at 6-10. The trial judge explained to McKnelly that he had the right to subpoena witnesses and compel their testimony. Id. at 9. The trial judge explained the maximum sentence. Id. at 6. The trial judge explained the sentence is mandatory, that McKnelly was not eligible for early release, or community control sanctions. Id. at 6-7. The trial judge further explained the plea bargain. Id. at 8.

{¶31}   McKnelly acknowledged that he understood the constitutional rights that he was waiving by entering a guilty plea, the specific charge to which he was pleading, and the maximum penalties involved. At the change of plea hearing McKnelly told the trial judge that he was "absolutely" satisfied with the advice and help given him by his attorney. T. *Plea,* May 24, 2021 at 7. McKnelly told the trial judge that he understood the charges and any possible defenses that he may have to those charges. Id. at 7.

{¶32}  McKnelly's attorney was not appointed; rather, McKnelly's attorney was retained. In addition, McKnelly signed a written plea agreement, together with his attorney, that was filed with the trial court.

{¶33}  McKnelly does not claim that he was unaware, was not properly advised or misunderstood the constitutional or non-constitutional rights that he was waiving before he entered his guilty plea. McKnelly does not argue that the trial judge failed to give him an opportunity to speak or bring to the trial judge's attention any of the contentions he now seeks to raise concerning his possible defenses or his attorney.

**McKnelly's argument that the indictment lacks complicity language is**

**without merit**

**{¶34}** It is well settled that an accomplice can be charged under either the complicity statute or as a principle offender. R.C. 2923.03(F) states: "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated * * * in terms of the principal offense" and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. *See State v. Keenan*, 81 Ohio St.3d 133, 151 (1998), citing *Hill v. Perini*, 788 F.2d 406, 407-408 (6th Cir. 1986). S*tate v. Herring*, 94 Ohio St.3d 246, 251 (2002); *State v. Hickman,* 2004 -Ohio- 6760, ¶ 89(5th Dist.).

**{¶35}** Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. *See, State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Mendoza*, 137 Ohio App.3d 336, 342 (3rd Dist. 2000), *quoting State v. Stepp*, 117 Ohio App.3d 561, 568–569 (4th Dist. 1997).

**McKnelly's contention that the state's recitation of facts in the indictment or at the plea hearing did not adequately support an aggravated-murder guilty charge is unsupported by the record.**

**{¶36}** Baker and the victim had verbal altercations within the past week and were feuding. Baker had come down in a blue car the day before and caused a disturbance at the apartment, breaking a window. Baker bragged to a friend, K.C. that she shot the victim

in the thigh and just kept shooting until she was out of bullets. K.C. described Baker as being proud of what had occurred and showing no remorse. K.C. also stated that McKnelly told her that he got Baker the gun and she believed that he got it from his mom's house. McKnelly obtained the firearm for Baker, provided her with transportation from Columbus to Newark to get the gun and then from Newark to Zanesville. Plea T. at 15-16. McKnelly drove Baker to the apartment where Baker shot the victim. McKnelly waited in the car while Baker went into the apartment and shot the victim multiple times. McKnelly drove Baker away from the scene, hid the gun used in the murder, and did not report the crime to the police. McKnelly told the police that Baker had said that she wanted to shoot the victim, although he claimed that she was joking.

{¶37} Circumstantial evidence is defined as "'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely*, 39 Ohio St.3d 147,150 (1988), *quoting* Black's Law Dictionary (5th Ed. 1979). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4 (1997).* "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 2005-Ohio-6046, ¶ 75, *quoting State v. Heinish*, 50 Ohio St.3d 231, 238(1990).

{¶38} In the case at bar, ample circumstantial evidence existed that would allow the trier of fact to conclude that McKnelly supported, assisted, encouraged, cooperated

with, advised, or incited another person to commit the offense. The trier of fact is not bound to accept McKnelly's argument that he believed Baker to be joking when she told him that she wanted to shoot the victim.

### McKnelly's Change of Heart Does Not Amount to Manifest Injustice

**{¶39}** McKnelly's claim that he was rushed or coerced into pleading guilty is based on a potential challenge to the state's evidence and not any misrepresentation, by his trial counsel, of the state's evidence. McKnelly's subsequent belief that there was a potential challenge to the state's evidence does not render his plea invalid. *See, e.g., State v. Piacella,* 27 Ohio St.2d 92, 94, 271 N.E.2d 852 (1971), *quoting Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (A plea is not invalidated by a defendant's failure to "correctly assess every relevant factor" or "because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case[.]"); *State v. Graham,* 2024-Ohio-1300, ¶27(6th Dist.)

**{¶40}** In the case at bar, while it is concerning that McKnelly entered his plea quickly after being indicted, it is not unheard of for an individual to enter a negotiated plea to a Bill of Information prior to the return of an Indictment. McKnelly's attorney was retained and is an experienced criminal defense attorney. Although McKnelly claims he did not meet or discuss the evidence with his attorney, McKnelly told the trial judge that he was "absolutely" satisfied with the advice and help given him by his attorney. T. *Plea,* May 24, 2021 at 7. His attorney presented ten letters of support for McKnelly during his sentencing hearing. T. *Sentencing,* June 28, 2021 at 4. His attorney further represented to the trial judge that he met with his client on multiple occasions. Id. During sentencing McKnelly said to the victim's family that he was sorry he had any role in this. He further

stated, "I wish I had stopped it, and I hope one day you can forgive me." T. *Sentencing*, June 28, 2021 at 5.

**{¶41}** We are not privy to the conversations between McKnelly and his attorney, or defense counsel's conversations with the prosecutor. McKnelly was free to discharge his retained counsel if he was dissatisfied with his representation instead of entering into the negotiated guilty plea.

**{¶42}** Based upon the entire record before us, it is entirely plausible that McKnelly was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. The fact that a different attorney later expresses a belief that McKnelly could have made a better deal is purely speculative and does not amount to a manifest injustice allowing McKnelly to withdraw his plea after sentencing.

### Conclusion

**{¶43}** We find based upon our review of the entire record, the record discloses that: (1) McKnelly's guilty plea was not the result of coercion, deception or intimidation; (2) retained counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) McKnelly was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. Therefore, the guilty plea has been voluntarily and intelligently made. *See, State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), paragraph one of the syllabus.

**{¶44}** Accordingly, under the circumstances of the case sub judice, we are unpersuaded the trial judge abused his discretion in declining to find a manifest injustice

warranting the extraordinary step of withdrawing McKnelly's guilty plea. We therefore overrule McKnelly's First Assignment of Error.

II.

{¶45} In his Second Assignment of Error, McKnelly argues he was denied the effective assistance of trial counsel.

### Standard of Appellate Review

{¶46} To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶47} To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In addition, to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; *Andtus v. Texas*, 590 U.S. 806, 813-814 (2020).

{¶48} A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Strickland* at 697; *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

### McKnelly's Contentions that Counsel Rushed McNelly into Pleading Guilty, And Did Not Review the Evidence or His Defenses with Him is Unsupported by The Record

{¶49} McKnelly told the trial judge that he was "absolutely" satisfied with the advice and help given him by his attorney. T. *Plea,* May 24, 2021 at 7. McKnelly told the trial judge that he understood the charges and any possible defenses that he may have to those charges. Id. at 7. His attorney presented ten letters of support for McKnelly during his sentencing hearing. T. *Sentencing,* June 28, 2021 at 4. His attorney further represented to the trial judge that he met with his client on multiple occasions. Id. McKnelly faced five serious criminal charges, which counsel negotiated down to one charge. Counsel was also able to obtain an agreed upon sentence that allows McKnelly to be considered for parole after twenty years.

{¶50} As we explained in our disposition of McKnelly's First Assignment of Error, McKnelly's guilty plea was not the result of coercion, deception or intimidation; counsel's advice was competent in light of the circumstances surrounding the indictment; the plea was made with the understanding of the nature of the charges; and, McKnelly was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both.

{¶51} "Not every restriction on counsel's time or opportunity * * * to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659(1984) at n. 26; *Accord, State v. Hancock*, 2006-Ohio-160, "[T]he Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after

investigation of options." *Strickland*, 466 U.S. at 680. However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective .... Limitations of time and money ... may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence." Id. at 681. *See, State v. Monaco*, 2024-Ohio-535, ¶ 46, (5th Dist.), *appeal not allowed*, 2024-Ohio-2160, ¶ 46.

{¶52} The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13, (1983); *State v. Blankenship*, 102 Ohio App.3d 534(12th Dist. 1995); *State v. Burroughs,* 2004-Ohio-4769, ¶ 11 (5th Dist.). In a case in which the defendant asked the trial court to discharge his court appointed attorney, the Court in *State v. Cowans*, 87 Ohio St.3d 68, (1999) noted:

> Even if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "'A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" *Brown v. United States* (D.C. 1959), 264 F.2d 363, 369 (U.S. App. D.C. 1959) (*en banc*), *cert. denied* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959), *quoted in McKee v. Harris*, 649 F.2d 927, 932 (2nd Cir. 1981). "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" *McKee*, 649 F.2d at 932, *quoting McKee v. Harris* (S.D.N.Y. 1980), 485 F.Supp. 866, 869.

*Cowans,* 87 Ohio St.3d at 73. *See, State v. Wise*, 5th Dist. 2021-Ohio-3190, ¶¶ 46-47 (5th Dist.). The Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. *State v. Brown*, 38 Ohio St.3d 305, 319(1988).

{¶53} The statements of the witnesses interviewed by the police do not exonerate McKnelly. No one disputed that Baker was the person who shot the victim. The fact that Baker may have been fearful does not explain her decision to shoot the victim multiple times. The witnesses do not provide an insight into why McKnelly hid the gun after the shooting, and why he did not contact the police. Baker and the victim had verbal altercations within the past week and were feuding. Baker had come down in a blue car the day before and caused a disturbance at the apartment, breaking a window. Baker bragged to a friend, K.C., that she shot the victim in the thigh and just kept shooting until she was out of bullets. K.C. described Baker as being proud of what had occurred and showing no remorse. K.C. also stated that McKnelly told her that he got Baker the gun and she believed that he got it from his mom's house. The trier of fact could just as easily dismiss McKnelly's claim that he did not believe Baker was going to use the gun to shoot the victim as a purely self-serving claim made after the fact to relive McKnelly of his responsibility for his actions.

{¶54} There is no evidence that indicates the result of the plea was unreliable or the proceeding was fundamentally unfair as a result of defense counsels' representation of McKnelly. McKnelly received a benefit of having the possibility of imprisonment without the possibility of parole exchanged for a sentence that included the possibility of parole after twenty years. The evidence in the record supports a finding that McKnelly's attorney

gave his client an honest assessment of the evidence against him and the outcome of his case. McKnelly was free to discharge his retained attorney rather than accept the negotiated plea. The fact that a different attorney later expresses a belief that McKnelly could have made a better deal is purely speculative and does not rise to a finding that counsel's performance fell below an objective standard of reasonableness resulting in an unreliable or fundamentally unfair outcome of the proceeding. If that were true, any defendant could withdraw his or her plea simply by having a different attorney later claim he or she could have obtained a better deal for the defendant.

{¶55} Accordingly, we find McKnelly fails to demonstrate either the deficit performance or prejudice that *Strickland* requires to support his allegation of ineffective assistance of counsel.

{¶56} McKnelly's Second Assignment of Error is overruled.

{¶57} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Baldwin, J., and

King, J., concur